## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT OWENSBORO

ULYSSES S.G. DAVIS III                                                    PLAINTIFF

v.                                                    CIVIL ACTION NO. 4:05CV-P84-M

CHARLES BASTING, *et al.*                                              DEFENDANTS

### MEMORANDUM OPINION

Plaintiff Ulysses S.G. Davis III, a convicted inmate currently incarcerated at the Kentucky

State Penitentiary, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and various other federal

and state laws.  This matter is before the Court for *sua sponte* screening pursuant to 28 U.S.C. §

1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).  For the reasons that follow,

the Court will dismiss a portion of the complaint and allow the remaining claims to proceed

beyond initial screening.

### I.  BACKGROUND AND SUMMARY OF CLAIMS

Plaintiff brings this action against twenty-six named Defendants in addition to "unknown

staff who may have violated [his] Rights, and Freedoms and unknown CTO - caseworkers."  As to

the named Defendants, John Rees is the Commissioner of the Kentucky Department of

Corrections.  The remaining twenty-five Defendants are officers and employees of the Green River

Correctional Complex ("GRCC").  Defendant Pattie R. Webb is Warden, Defendant Louis

Korfhage is Warden of Security, and Defendant Harold Radford is Warden of Programs.

Defendant Steven Ford is Director of Internal Affairs, Defendant Frederick J. Basham is Internal

Affairs Assistant, Defendant Robert Jenkins is the Adjustment Committee Chairman, and

Defendant Marion Chism is the Classification Chairman.  Defendant Angela Bard is the Director

of the Legal Department and Chaplain of Religious Services, and Defendant Jim Acquaviva is the

Assistant Director of Legal Services.  Defendant Bob Smith is the Compound Psychologist, Defendant Sonja Collins is the Nursing Administrator, and Defendant Mary Croley is a nurse. Defendant Sarita Holt is the "Unit T UA [Unit Assistant] II," Defendant Shawn Mason is the "SMU, UA II," and Defendant Ron Beck is the Procedures Officer and Grievance Coordinator. Defendants Jimmy Anderson, Darrell Wheeler, and Debra Banks are sergeants; Defendants Charles Basting, Eric Woodward, and Joel Elliot are lieutenants; and Defendants David Smith, Robert Asberry, Steven Gee, and Yvonda Gregory are officers.  Plaintiff sues each Defendant in his or her individual and official capacities.

Plaintiff broadly claims that Defendants "have intentionally racially and used class based discriminatory practices against him as well as selective discrimination in which they have conspired to use government policies to interfere with [his] civil rights."  (Compl., pp. 11-12). He additionally claims that Defendants have "acted with deliberate indifference and [] knew and disregarded [his] Rights to [] practice his Religious beliefs, and to be Free from excessive use of Force."  (Compl., p. 12).  He maintains that Defendants violated his rights "Because he is African-Indian-American and Muslim who practices Al-Islam."  *Id.*

Factually, Plaintiff reports arriving at the GRCC on June 30, 2004, on transfer from the Northpoint Training Center.  The alleged incidents of harassment and threats began shortly after his arrival at GRCC during a classification hearing held on July 6, 2004.  At the hearing, Defendant Chism verbally disrespected and threatened Plaintiff with physical and mental harm if he refused to accept a labor pool assignment.  Chism said that Plaintiff "would be beaten down and placed in SMU (segregation)."  (Compl., p. 22).  Plaintiff told the classification committee that he was not forced to work at the Northpoint Training Center and that his "extremely high blood pressure" would not permit him "to do such demeaning [] and strenuous work in the inclement

2

weather."[1] (Compl., p. 21).  Plaintiff also noted that other inmates were given 90 days in which to find employment and requested to be placed on 90-day unassigned status, but the request was denied.  He was told that his only recourse was to appeal to Defendant Warden Webb, which he did.  The appeal was denied.

Plaintiff contends that Defendants Radford, Webb, Holt, and Korfage were aware of Chism's threats, yet "conspired to do nothing but to plot and plan for the Plaintiff's demise." (Compl, pp. 22-23).  He further contends that Defendants Webb, Korfhage, Radford, Holt, Chism, Jenkins, Basham, Ford, Rees, and unknown caseworkers (CTO's) violated his rights "when they set about to use the classification committee actions as a form of punishment and behavior control." (Compl., p. 44).

On July 16, 2004, reports Plaintiff, the threats worsened.  He "received a very serious verbal threat" by Defendant Anderson while standing in the lunch line.  Anderson told Plaintiff that "He will work labor pool or else they would 'beat his Black Nigger Ass' and throw him in segregation."  Plaintiff immediately went to see Defendant Holt, a unit assistant of Dorm #6, where Plaintiff was housed.  He told Ms. Holt about the threats, and Ms. Holt stated, "'Davis you need to be very careful and I will investigate the matter did you appeal classification decision?" (Compl., p. 24).  Plaintiff answered in the affirmative.  Because of Ms. Holt's statement, however, Plaintiff believes that Ms. Holt knew that "they were planning to cause him great harm," *id.*, and was thus part of the conspiracy.

---

[1]He additionally reported that he had glaucoma but failed to explain how that condition prevented him from working in the labor pool.

Because Plaintiff refused to sign up for the labor pool on July 17, 2004, non-defendant Officer Birman stated, "'Boy if you don't sign this sheet and work this here labor pool job. **We are going to beat your Black ass down Nigger, put you in the hole.  Now sign the damn sheet.'"** (Compl., p. 25).  Plaintiff informed the officer that he was not going to work in the labor pool and told the officer to "go kill yourself! Coward!" *Id.*

When Plaintiff did not show up for the labor pool on July 18, 2004, Defendants Woodward, David Smith, and Asberry, went to visit Plaintiff.  Plaintiff was in the day-room of his dorm ironing his clothes, when Defendants Woodward, Smith, and Asberry approached him.  Woodward asked him, "'Are [you] going [to] work labor pool?  If you are I am going to write-up a disciplinary report, and if you're not I am going to still put you on disciplinary report and lock you in a segregation unit.'"  *Id.*  Woodward then pulled the iron cord out of the electrical socket by force.  Plaintiff told Woodward that he had filed an appeal of the classification decision, that he did not apply for a labor pool job, and that he did not work on Sundays because he is a Muslim and adheres to the nationally recognized day of rest.  With a raised voice, Woodward started threatening and swearing at Plaintiff and said, "you can pack your property or we can pack you[r] property.  If you pack your property and take to segregation you do not have wear handcuffs." (Compl., p.26).  Plaintiff packed his own property and was not handcuffed and told the officers that they were violating his First Amendment rights to even attempt to work him on a Sunday.

During the trip to segregation, while on the Unit T Building Walkway, Officer Smith attempted to turn Plaintiff's property cart over and started "negative conversation."   According to Plaintiff, Smith said,

> Who do the F**k do you think you are? huh, You could've saved us all this trouble with you would've went on and worked.  You're nothing but a F**king Nigger Inmate–You're not better than anyone else, and you're not **No F**kin Muslim**.

4

> You're not from No damn Iraq!  You think by going to segregation you're getting
> away from me.  When they let you out of segregation.  I am going to ask for you
> personally to be placed on my labor crew.  I'm going to work you until you sweat
> Nigger.

(Compl., p. 27-28).  Then, without warning, Officer Smith hit Plaintiff in the face on his right side

with a pair of handcuffs, and an altercation ensued involving Plaintiff, Officer Smith, Sgt.

Anderson, Lt. Basting, Sgt. Banks, and Officer Asberry.

At various times during the incident, officers hit and kicked Plaintiff in the face, waist, and

other parts of the body, threw him down on the ground, smothered his face in the ground, had his

neck in a choke hold, called him racial names, and made racial and religious slurs.  At one point,

Sgt. Banks, a female, pulled Plaintiff's pants down and hit his naked buttocks.  Officers Asberry,

Banks, Basting, and Anderson placed handcuffs on Plaintiff during the incident and hit him in his

back, buttocks, arms, and head.  Plaintiff yelled for them to stop because he could not breathe.

Defendants beat Plaintiff in front of the entire GRCC general population and outside visitors.

Plaintiff was then forcibly jerked up to his feet.  At this time Sgt. Wheeler and Officer Gee

arrived at the scene.  Officer Gee called Plaintiff "'A Black Muslim Nigger'" and said, "'we are to

beat your ass bloody.'"  (Compl., p. 30).  Sgt. Wheeler hit Plaintiff several times in the chest and

said, "Listen You Black Motherf**ker.  I told you Nigger you ain't no Muslim you not from Iraq

motherf**ker.  You're going to work here."  *Id.*  When Plaintiff tried to speak, he was hit on the

left side of his jaw.

Sgt. Wheeler then ripped the straps of Plaintiff's eyeglasses and threw them to the ground

and snatched Plaintiff's Islamic prayer cap from his head and threw it to the ground and kicked it.

Plaintiff asked for his property back and refused to move until he received it.  Sgt. Wheeler said

"slam[] his Black Ass Face First in the ground.  I bet he'll move then."  (Compl., p. 31).  Officer

5

Gee and others then picked Plaintiff up and slammed him face first into the ground.  When Plaintiff turned his head to the side, the officers started kicking and punching him while his hands were secured behind his back, and they kept yelling, "Nigger are you going to walk now!" and "do what we say or are we going to kill you!"  (Compl., pp. 31-32).  When other inmates started yelling, "Police Brutality," Sgt. Wheeler ordered the yard closed.

The officers picked Plaintiff up and dragged him toward the road, dropping him twice.  Lt. Woodward showed up at the scene and told the other officers to stand Plaintiff up.  To the officers, Lt. Woodward said, "Davis, is bleeding you all need to start complaining about you have medical problems before I call the nurse."  (Compl., p. 32).  Defendant Nurse Croley went to the scene of the incident and examined Plaintiff.  Plaintiff asked to be taken to an outside hospital, but Nurse Croley refused the request and told Plaintiff to walk to SMU.  Plaintiff refused, however, because his eye glasses and religious property were still in the field.

Plaintiff was then forced up on his feet with his hands cuffed behind his back.  Lt. Woodward said, "F**k him slam him on the ground again" and ordered that shackles be placed on him.  (Compl., p. 43).  Plaintiff kept asking about his property, and Sgt. Banks pulled his pants down and hit him on his naked buttocks.  Lt. Woodward was doing the same.  The officers had to show Plaintiff his glasses and prayer cap before he would take a step.  Warden Korfhage asked over the radio, "did he have a weapon! Does he have knife!"  Lt. Woodward responded, "No!"  Plaintiff was hit and punched from behind as he walked the 250 yards to the SMU facility.  Upon arrival at SMU,  Plaintiff was strip searched in front of a female officer, Officer Gregory.

Plaintiff asked Lt. Elliot for outside medical treatment, but the lieutenant denied the request.  Officers who claimed they were injured, however, were advised to seek outside treatment. Plaintiff reports that he was bleeding, had serious bruises and facial swelling, had a tooth knocked out, and had pain in his hands, wrist, face, ankles, and chest.  Plaintiff claims that Nurse Croley, Head Administrator Sonja Collins, and Lt. Elliott intentionally denied him adequate medical treatment causing him to suffer months of intentional delays.

Plaintiff claims that the Islamic community at GRCC has had long-standing trouble with security staff and the prison officials before his arrival at the facility in June 2004.  He claims that he was "exposed to sufficient serious risk of harm because he belongs to an identifiable group of prisoners who have been frequently singled out for violence and violent attacks by security staff because he practice[s] orthodox Al-Islam."  (Compl., p. 41).  Plaintiff further claims that Defendants Webb, Korfhage, Radford, Holt, Chism, and Wheeler "all conspired against the Plaintiff along with their co-workers . . . to intentionally violat[e] [his] rights." (Compl., p. 35).

Following the incident, Plaintiff contends that he was placed in solitary confinement for longer than 15 days "with no contact with the outside world."  (Compl., p. 49).  While in segregation, he was denied meaningful recreation, deprived of his religious Halal diet, denied full canteen service needed to supplement his religious diet, and denied the opportunity to receive Islamic counsel and communal religious services in the prison chapel.  He claims that the following Defendants were involved in a conspiracy to cause these deprivations:  Webb, Korfhage, Radford, Bard, Mason, Holt, Chism, Jenkins, Basham, Ford, Bob Smith, Elliot, Rees, and unknown CTO's.

Plaintiff received numerous disciplinary write-ups stemming from the July 18th incident, and he alleges due process violations and a conspiracy to violate his rights during the disciplinary process by Defendants Webb, Korfhage, Radford, Basham, Ford, Jenkins, Bob Smith, Bard, Acquaviva, Asberry, Anderson, and Basting. (Compl., pp. 50-53). Plaintiff alleges that during the disciplinary process, he was denied the right to choose his own legal defense, denied documents, denied the right to call witnesses, denied the opportunity to view videotapes before the court-call hearing, and failed to receive a statement of evidence on which the committee members relied. He further claims that Officer Asberry fabricated his assault and that Officers Anderson and Basting fabricated their claims of serious injuries.

Ultimately, Plaintiff was found guilty of the following prison offenses: (1) Category III, Item 6 offense for refusing or failing to carry out a work assignment and was sentenced to 15 days segregation with credit for time served; (2) Category VII, Item 1 offense for physical action against employee (Plaintiff allegedly hit Officer Asberry in the chest during the altercation) and was sentenced to 180 days of disciplinary segregation to be served consecutively with any other disciplinary time he has to serve, two years of non-restorable good time loss, and referral to the Commonwealth Attorney's Office; (3) Category VII, Item 4 offense for physical action resulting in the injury of an employee (Plaintiff allegedly pushed Lt. Basting back about four feet while he was trying to restrain Plaintiff) and was sentenced to 180 days of disciplinary segregation to be served consecutively with any other disciplinary time he has to serve, two years of non-restorable good time loss, and restitution for Lt. Basting's trip to the hospital; and (4) Category VII, Item 4 offense for physical action resulting in injury to employee (Plaintiff reportedly injured Sgt. Anderson during the altercation) and was sentenced to 180 days of disciplinary segregation to be served consecutively with any other disciplinary time he has to serve, two years of non-restorable good

8

time loss, restitution for medical examination and treatment of Sgt. Anderson, and referral to Commonwealth Attorney's Office.  Warden Webb denied all appeals.

Months following the incident, Plaintiff was transferred from GRCC to the Kentucky State Penitentiary and placed on the maximum assault walk, an "area with serious violent and mentally ill inmates."  (Compl., pp. 7-8, 55-57).  At KSP, Plaintiff contends that he is having to deal with continually violent security staff, is being denied adequate medical treatment, and has been placed on a grievance restriction.  He reports that in May 2005, unknown officers at KSP[2] set him up to have his throat cut by another inmate.  Plaintiff reports filing a grievance but admits no response as of the filing of the complaint.

Davis cites to various federal and state laws which he claims have been violated as a result of Defendants' actions.  He alleges a violation of 18 U.S.C. §§ 229(c), 241 and 242 and 42 U.S.C. §§ 1980, 1981, 1982, 1983, 1988(1), 1985(2) & (3), 1986, 1791, 1868, 1876, and 1884.  He also alleges state law assault, battery and negligence claims and alleges violations of various sections of the Kentucky Constitution and Ky. Rev. Stat. Ann. §§ 532.031 and 508.100.

As relief, Davis seeks compensatory and punitive damages and various forms of injunctive relief (Compl., pp. 58-61).  Specifically, he seeks to be exonerated of the assault charges and transferred back to GRCC's general population; asks that the restitution order be dismissed; and requests new property or money in exchange for his property lost by Defendants.  He asks for permission to practice his religion, to receive his Halal diet, and for permission to attend religious service even while housed in a segregation unit anywhere in the state.  He finally seeks cessation

---

[2]An attachment to the complaint describes the incident in greater detail and mentions the involvement of Lt. Harris and Officers Madden, Tyre, Cummings, and Wilkerson.  Yet none of these individuals are listed as a defendant.

of the 90-day unassigned program and wants the Defendants to be prohibited from working in any correctional facility in 28 states of his choosing.

## II.  STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, this court must review the instant action.  28 U.S.C. § 1915A ("The court shall review, . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."); *McGore v. Wrigglesworth*, 114 F.3d 601, 604-05 (6th Cir. 1997).  Upon review, this court must dismiss "the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  § 1915A(b).

A complaint may be dismissed as frivolous under § 1915A if it is premised on a nonexistent legal interest or delusional factual scenario.  *Neitzke v. Williams*, 490 U.S. 319, 329-30 (1989).  A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).  In reviewing a complaint under this standard, the court must accept all factual allegations contained in the complaint as true and must also construe the pleading in the light most favorable to the plaintiff.  *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

## III.  ANALYSIS

### A.  18 U.S.C. §§ 229(c), 241, and 242

Sections 241 and 242 of Title 18 of the United States Code are criminal statutes which impose punishment by fine or imprisonment for the deprivation of certain federal rights, privileges or immunities.  These statutes do not give rise to any private civil cause of action, however.  *Cok v.*

*Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989); *Leach v. Manning*, 105 F. Supp. 2d 707, 717 (E.D. Mich. 2000). Consequently, the claims arising under 18 U.S.C. §§ 241 and 242 must be dismissed.

Section 229 of Title 18 is a criminal statute which prohibits the development, production, acquisition, transfer, receipt, stockpiling, retention, possession or use of chemical weapons. While this statute imposes criminal and *civil* penalties, it is only the Attorney General who "may bring a civil action in the appropriate United States district court against any person who violates section 229." 18 U.S.C. § 229A(b). As Plaintiff has alleged no facts demonstrating § 229's applicability to his situation, any claims arising under that statute must be dismissed.

### B. <u>42 U.S.C. §§ 1980, 1988(1), 1791, 1868, 1876, and 1884</u>

Plaintiff's claim arising under 42 U.S.C. § 1980 must be dismissed as that statute contains no legislation but is a section of the Code specifically "reserved for future legislation." Additionally, any claim under 42 U.S.C. § 1791 must be dismissed, as that statute is the "Bill Emerson Good Samaritan Food Donation Act" and clearly has no applicability to the instant case.

Sections 1868, 1876, and 1884 of Title 42 of the United States Code are contained in Chapter 16 which establishes and governs the National Science Foundation. Section 1868 allows for the establishment of special commissions within the National Science Foundation, and sections 1876 and 1884 are repealed statutes. As these statutes provide for no cause of action under which Plaintiff may seek relief, any claims asserted thereunder must be dismissed.

Plaintiff also cites 42 U.S.C. § 1988(1) as a basis for this action. This statutory provision, however, does not create an independent cause of action. *Moor v. County of Alameda*, 411 U.S. 693, 702 (1973); *Hall v. Wooten*, 506 F.2d 564, 568 (6th Cir. 1974); *Otto v. Somers*, 332 F.2d 697, 699 (6th Cir. 1964), *cert. denied*, 379 U.S. 1002 (1965). Rather, section "1988 proceeds to authorize federal courts, where federal law is unsuited or insufficient 'to furnish suitable

11

remedies,' to look to principles of the common law, as altered by state law, so long as such principles are not inconsistent with the Constitution and laws of the United States." *Moor*, 411 U.S. at 702-03.  For example, because § 1983 does not provide for the right of survivorship, the Sixth Circuit in *Hall v. Wooten*, 506 F.2d 564 (6th Cir. 1974), "adopt[ed] as federal common law, the law of Kentucky, the forum state, which provides for the survival of actions for personal injury." *Id.* at 569.  Plaintiff has utterly failed to demonstrate § 1988's applicability to his case, and as such, that claim will be dismissed.

### C. <u>42 U.S.C. § 1982</u>

Section 1982 protects the property rights of citizens and provides that "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." Section 1982 was designed to prohibit all racial discrimination, whether or not under color of law, with respect to the purchase and sale of property.  *United States v. Brown*, 49 F.3d 1162, 1166 (6th Cir. 1995) ("Section 1982 was enacted to enable Congress to enforce the Thirteenth Amendment, specifically to 'prohibit all racial discrimination, private and public, in the sale and rental of property.'") (quoting *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 437 (1968)).

There is nothing in the complaint that would indicate that Plaintiff's allegations relate to the Defendants' frustrating his attempts to purchase or lease property.  Accordingly, the Court will dismiss this claim.

### D. <u>42 U.S.C. § 1983</u>

#### 1. <u>Official capacity claims for damages</u>

The official capacity claims for damages will be dismissed on two bases.  First, Defendants, as state officials and employees sued in their official capacities for damages, are

absolutely immune from § 1983 liability under the Eleventh Amendment to the United States Constitution. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."). Second, Defendants are not "persons" subject to suit within the meaning of § 1983 when sued in their official capacities for monetary damages. *Id.* (concluding that a state, its agencies, and its officials sued in their official capacities for monetary damages are not considered persons for the purpose of a § 1983 claim); *Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir. 1994) (same). Consequently, the § 1983 official capacity claims for damages against all Defendants must be dismissed.

## 2. **KSP complaints**

The Court is concerned about Plaintiff's allegations that he is being housed at Kentucky State Penitentiary ("KSP") in unfavorable conditions in a maximum assault wing with violent inmates and subject to abuse and threats by staff and inmates. Plaintiff, however, is not specific in his allegations, and more fundamentally, he fails to name any KSP officer or employee as a defendant. It even appears as though Plaintiff describes the conditions at KSP more to bolster his claim that he should be transferred back to GRCC rather than as a separate claim in this action. To be sure, in his statement of claim, Plaintiff writes, "The Plaintiff is bring[ing] suit under 1983 U.S.C. and 42 U.S.C.A. 1983 against officers for the Department of Kentucky Corrections, at the Green River Correctional Complex." (Compl., pp. 8-9).

For these reasons, the KSP claims will be dismissed without prejudice so there will be no preclusive effects should Plaintiff wish to file a new action asserting specific facts against specific KSP personnel who he claims are allegedly violating his constitutional rights. The Court reminds Plaintiff that should he file a separate action, he must specify the capacity or capacities in which he

seeks to sue defendants and plead exhaustion of administrative remedies or their unavailability. By separate Order, the Court has already directed the Clerk of Court to send the plaintiff a § 1983 form should he choose to file a separate action against KSP personnel.[3]

### 3. Lost property claim

Plaintiff contends that some of his property "was lost due to the defendants abusive actions."  The Supreme Court has held that where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *rev'd on other grounds, Daniels v. Williams,* 474 U.S. 327 (1986)).  In order to assert a claim for deprivation of property without due process pursuant to 42 U.S.C. § 1983, a plaintiff must allege that the state post deprivation procedures are inadequate to remedy the deprivation.  *Parratt,* 451 U.S. 543-44.  The law of this Circuit is in accord.  For example, in *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983), *cert. denied*, 469 U.S. 834 (1984), the court held that "in § 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate."  *Id.* at 1066.  The Sixth Circuit has found that Kentucky's statutory remedy for such losses is adequate within the meaning of *Parratt*.  *See Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985).

---

[3]The Court notes that subsequent to the filing of the instant action, the plaintiff filed two additional civil rights actions against various GRCC *and* KSP officers and employees.  *See* Civil Action Nos. 4:05CV-P173-M and 5:05CV-P242-R.  The primary focus of those complaints, however, is the alleged denial of access to courts and ineffective grievance mechanism, not the alleged threats and conditions of confinement in KSP segregation.

Because Plaintiff has failed to demonstrate the inadequacy of state remedies in the case at bar, his Fourteenth Amendment claims for loss of personal property must be dismissed for failure to state a claim upon which relief may be granted.

**4. Remaining § 1983 claims**.

Despite dismissal of the foregoing claims, the Court believes that Plaintiff has alleged sufficient facts to state numerous constitutional claims, which the Court will allow to proceed beyond initial screening.  Specifically, the Court will allow the following claims to proceed against the specified Defendants in their individual and official capacities:

(1)  the Fourteenth Amendment claim that he was denied due process and equal protection during the classification process against Defendants Webb, Korfhage, Radford, Holt, Chism, Jenkins, Basham, Ford, Rees, and unknown caseworkers (CTO's);

(2)  the Eighth Amendment excessive force and strip search claims arising out of the July 18, 2004, incident against Defendants David Smith, Asberry, Woodward, Basting, Anderson, Banks, Wheeler, Gee, Korfhage, and Gregory and the First Amendment right to privacy claim arising out of that incident against Defendants Banks, Woodward, Elliot, and Gregory;

(3)  the Fourteenth Amendment equal protection and First Amendment retaliation claims that the July 18, 2004, incident occurred because he is an African-Indian-American and a Muslim and refused to work a labor pool job on a Sunday will proceed against Defendants David Smith, Asberry, Woodward, Basting, Anderson, Banks, Wheeler, Gee, Korfhage, Gregory, Webb, Radford, Holt, Chism, Rees, Jenkins, Basham, and Ford.  Plaintiff's claim that those same-named Defendants conspired to harm him because of his race and religion will also continue;

(3)  the Eighth Amendment claim that he was denied medical treatment for his serious medical needs following the July 18th-incident and his Fourteenth Amendment equal protection

15

claim that he was denied outside medical attention while officers involved in the altercation who had only minor injuries were sent to the hospitals will proceed against Defendants Croley, Collins, and Elliot;

(4)  the claim that his Fourteenth Amendment procedural due process rights were violated during the disciplinary proceedings following the July 18th-assault will proceed against Defendants Webb, Korfhage, Radford, Basham, Ford, Jenkins, Bob Smith, Bard, Acquaviva, Asberry, Anderson, and Basting.  The claim that those Defendants conspired to deprive Plaintiff of his due process rights will also continue; and

(5)  the First Amendment claim that Plaintiff was denied free exercise of his religion while in segregation at GRCC and the Eighth Amendment claim that he was housed in solitary confinement for longer than 15 days and denied meaningful recreation while in segregation will proceed against Defendants Webb, Korfhage, Radford, Bard, Mason, Holt, Chism, Jenkins, Basham, Ford, Bob Smith, Elliot, Rees, and unknown CTO's.

### E.  42 U.S.C. §§ 1981, 1985 and 1986

Because Plaintiff alleges that Defendants' actions described throughout the complaint were motivated, at least in part, by Plaintiff's race, the Court will allow the claims arising under 42 U.S.C. §§ 1981, 1985, and 1986 to survive initial screening and continue against all Defendants.

### F.  State law claims

Plaintiff alleges state law negligence, assault and battery claims against Defendants as well as violations of Sections 1, 2, 3, 5, 10 and 17 of the Kentucky Constitution and Ky. Rev. Stat. Ann. §§ 532.031 and 508.100.  These claims are allowed to proceed against all Defendants at this time.

The Court will enter a separate Scheduling Order governing the development of the remaining claims and will enter a separate Order dismissing all other claims.  In permitting the various claims listed above to proceed against the specified Defendants, the Court passes no judgment on the merit and ultimate outcome of the action.

Date:

cc:     Plaintiff, *pro se*
        General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4414.005